# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | |
|---|---|
| ALOFT MEDIA, LLC,<br><br>                Plaintiff,<br><br>    v.<br><br>YAHOO! INC., GOOGLE, INC., AND AOL LLC,<br><br>                Defendants. | Civil Case No. 6:08-cv-509 (LED) |

## **DEFENDANTS' MOTION TO TRANSFER PURSUANT TO 28 U.S.C. § 1404(a)**

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................ ii

I.  RELEVANT PROCEDURAL AND FACTUAL BACKGROUND ............................... 1
    A.  Lawsuit Status ........................................................................................................ 1
    B.  Defendants' Connections To Northern California, And Lack Of
        Connections To Eastern Texas ............................................................................... 2
    C.  Aloft's Connections To Northern California, And Lack Of
        Connections To Eastern Texas ............................................................................... 3
    D.  Connections Of Potential Party And Non-Party Witnesses
        To Northern California .......................................................................................... 4

II. ARGUMENT .................................................................................................................. 6
    A.  Legal Standard Under 28 U.S.C. § 1404(a) .......................................................... 6
    B.  The Northern District Of California Is Clearly The More
        Convenient Venue .................................................................................................. 8
        1.  Aloft could have brought this case in the Northern District
            of California. ............................................................................................... 8
        2.  Each of the relevant private and public interest factors
            favors transfer to the Northern District of California. ............................... 8
            (a)  The location of sources of evidence strongly favors
                 transfer. ............................................................................................ 8
            (b)  The availability of compulsory process factor favors
                 transfer. ............................................................................................ 9
            (c)  The cost of attendance for willing witnesses
                 strongly favors transfer. ................................................................ 10
            (d)  The other practical problems factor is neutral as to
                 transfer. .......................................................................................... 12
            (e)  The court congestion factor is neutral as to transfer. ................... 12
            (f)  The local interest factor substantially favors
                 transfer. .......................................................................................... 12
            (g)  The conflict of and familiarity with the law is a
                 neutral factor. ................................................................................ 14

III. CONCLUSION ............................................................................................................ 14

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Amini Innovation Corp. Bank & Estate Liquidators, Inc.*,
    512 F. Supp. 2d 1039, 1044 (S.D. Tex. 2007) ........................................................................11

*Aloft Media, LLC v. Adobe Sys. Inc.*,
    2008 U.S. Dist. LEXIS 23601 (E.D. Tex. Mar. 25, 2008)..........................................................3

*Am. Calcar, Inc. v. Am. Honda Motor Co.*,
    2006 U.S. Dist. LEXIS 69373 (E.D. Tex. Sept. 26, 2006) ......................................................12

*Broad. Data Retrieval Corp. v. Sirius Satellite Radio, Inc.*,
    79 U.S.P.Q. 2d 1603 (C.D. Cal. 2006) ....................................................................................13

*Fifth Generation Computer Corp. v. IBM Corp.*,
    No. 9:08-cv-205, 2009 U.S. Dist. LEXIS 12502 (E.D. Tex. Feb. 13, 2009).................9, 11, 14

*Gemini IP Tech. v. Hewlett-Packard Co.*,
    No. 07-C-205-S, 2007 WL 2050983 (W.D. Wisc. July 16, 2007) ...........................................13

*In re Horseshoe Entm't*,
    337 F.3d 429 (5th Cir. 2003) .....................................................................................................6

*In re TS Tech USA Corp.*,
    551 F.3d 1315 (Fed. Cir. 2009).................................................................................7, 8, 10, 11

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) (*en banc*) (*Volkswagen II*)..............................................6, 7, 9, 10

*Invitrogen Corp. v. General Elec. Co.*,
    No. 6:08-cv-113, 2009 U.S. Dist. LEXIS 9113 (E.D. Tex. Feb. 9, 2009)..................................9

*MedioStream, Inc. v. Acer Am. Corp.*,
    No. 2:07-cv-376, 2008 U.S. Dist. LEXIS 74066 (E.D. Tex. Sept. 26, 2008)...........................12

*Odom v. Microsoft*,
    No. 6:08-cv-331, 2009 U.S. Dist. LEXIS 9835 (E.D. Tex. Jan. 30, 2009) ...................9, 11, 14

*Partsriver, Inc. v. Shopzilla, Inc.*,
    No. 2:07-cv-440, 2009 U.S. Dist. LEXIS 12482 (E.D. Tex. Jan. 30, 2009) ......................11, 13

*Surfer Internet Broad. of Miss., LLC v. XM Satellite Radio Inc.*,
    No. 4:07-cv-034, 2008 WL 1868426 (N.D. Miss. Apr. 24, 2008)............................................13

**STATUTES AND RULES**

28 U.S.C.
    § 1391(c) ...................................................................................................................8
    § 1400(b) ...................................................................................................................8
    § 1404(a) .......................................................................................................6, 10, 13

Federal Rules of Civil Procedure
    Rule 45(c)(3)(A)(ii) ..................................................................................................9
    Rule 45(c)(3)(B)(iii) .................................................................................................9

This lawsuit has minimal connections to the Eastern District of Texas, but substantial connections to the Northern District of California. In fact, Plaintiff Aloft Media is a shell company with no employees. Its principal place of business is in San Jose, California. Its Longview office sits empty and exists solely to file patent infringement lawsuits in the Eastern District of Texas. And its sole owner and officer—Mr. Zilka—resides in the Northern District of California, where his law practice is also located. In contrast, the remaining Defendants—Yahoo! and Google—have their main offices within the Northern District of California and perform work relating to their accused products in those offices. Moreover, the alleged inventor (Mr. Zilka) and a large majority of party and potential non-party witnesses—including those likely to be called at trial—reside in the Northern District of California. Given the substantial connections to the Northern District of California and the *de minimus* connections to the Eastern District of Texas, it would be clearly more convenient for all involved if this case were transferred to the Northern District of California.

**I.      RELEVANT PROCEDURAL AND FACTUAL BACKGROUND**

   **A.      Lawsuit Status**

   1.      Aloft Media LLC ("Plaintiff" or "Aloft") filed a patent infringement action against Yahoo!, Google, and AOL on December 30, 2008, alleging infringement of U.S. Patent No. 7,472,351. *See* Complaint for Patent Infringement (Dkt. 1) (filed Dec. 30, 2008) ("Complaint").

   2.      Aloft recently settled with Defendant AOL. *See* Joint Motion to Dismiss (Dkt. 35) (filed Apr. 3, 2009).

   3.      The remaining Defendants—Yahoo! and Google (together, "Defendants")—have filed answers and counterclaims. *See*, *e.g.*, Defendant Yahoo! Inc.'s Answer, Affirmative Defenses, and Counterclaims to Complaint for Patent Infringement (Dkt. 22) (filed Feb. 19, 2009) ("Yahoo! Answer"); Defendant Google Inc.'s Answer to Plaintiff's Complaint (Dkt. 25) (filed Feb. 19, 2009) ("Google Answer").

4. No Discovery Order or Docket Control Order has yet been issued. *See* Declaration of Brooks Beard In Support of Defendants' Motion to Transfer (filed herewith) ("Beard Decl."), ¶ 2.

5. A status conference is set for today, April 6, 2009. *See* Order (Dkt. 32) (filed Mar. 2, 2009).

### B. Defendants' Connections To Northern California, And Lack Of Connections To Eastern Texas

6. Yahoo!'s main office is in Sunnyvale, California, which is located within the Northern District of California. *See* Declaration of Chris P. Saari In Support of Defendants' Motion to Transfer (filed herewith) ("Saari Decl."), ¶¶ 2-4.

7. A majority of Yahoo! employees with information potentially relevant to this lawsuit work out of Yahoo!'s Sunnyvale and Santa Clara offices, located within the Northern District of California. *See* Saari Decl., ¶ 6.

8. Yahoo! has no office or employee located in the Eastern District of Texas and no Yahoo! employee with information potentially relevant to this lawsuit works or resides anywhere in Texas. *See* Saari Decl., ¶¶ 5, 7.

9. The bulk of Yahoo!'s business activities relating to the accused Yahoo! product take place in its Northern California offices. *See* Saari Decl., ¶ 11.

10. Essentially all of the Yahoo! documents relevant to this case are located in Yahoo!'s Northern California offices. *See* Saari Decl., ¶ 12.

11. The accused Yahoo! products were developed and tested at its Northern California offices. *See* Saari Decl., ¶¶ 6, 11, 13.

12. The source code for Yahoo!'s accused products is located at its Northern California offices and will be made available for inspection only at those offices. *See* Saari Decl., ¶ 14; Beard Decl., ¶ 3.

13. None of Yahoo!'s potentially relevant information or witnesses for this case is located in Texas. *See* Saari Decl., ¶¶ 5, 7, 15.

14. Google's main office is in Mountain View, California, which is located within the Northern District of California. *See* Declaration of Scott T. Weingaertner In Support of Defendant's Motion to Transfer (filed herewith) ("Weingaertner Decl."), ¶ 2.

15. A majority of Google employees with information potentially relevant to this lawsuit work out of Google's Mountain View, California headquarters (located in the Northern District) and Google's Kirkland Engineering Office in Kirkland, Washington. *See* Weingaertner Decl., ¶¶ 4, 5.

16. Google has no office or employee currently located in the Eastern District of Texas. *See* Weingaertner Decl., ¶ 8.

17. The bulk of Google's business activities relating to the accused Google product take place in its Northern California and Washington offices. *See* Weingaertner Decl., ¶ 3.

18. Substantially all of the documents related to Google's accused products are either located in, or most accessible at, its Northern California and Washington offices. *See* Weingaertner Decl., ¶ 6.

19. The accused Google products were primarily developed and tested at its Kirkland, Washington offices. *See* Weingaertner Decl., ¶ 3.

20. The source code for Google's accused products is located in, or most accessible at, its Mountain View, California and Kirkland, Washington offices and will be made available for inspection only at those offices. *See* Weingaertner Decl., ¶ 7.

21. None of Google's potentially relevant information or witnesses for this case is located in Texas. *See* Weingaertner Decl., ¶ 9.

**C. Aloft's Connections To Northern California, And Lack Of Connections To Eastern Texas**

22. Formed in July 2007, Aloft is a Texas limited liability company with its principal place of business located at 100 Park Center Plaza, Suite 300, Room B, San Jose, California, 95113, within the Northern District of California. *See Aloft Media, LLC v. Adobe Sys. Inc.*, 2008 U.S. Dist. LEXIS 23601, at *2 (E.D. Tex. Mar. 25, 2008); Beard Decl., ¶ 4.

23. Kevin Zilka, inventor of the '351 patent, lives in San Jose, California (which is within the Northern District of California), and is a principal in the law firm of Zilka-Kotab PC, which has its sole office located at 100 W. San Fernando Street, Suite 300, San Jose, California, 95113 (which is also within the Northern District of California). *See* Beard Decl., ¶ 5, Ex. 1, ¶ 6, Ex. 2 at 10:19-11:3, ¶ 7, Ex. 4.

24. Aloft's principal place of business in San Jose and Zilka-Kotab PC's sole office are located within one block of each other, both within the Northern District of California. *See* Beard Decl., ¶ 8, Ex. 5.

25. According to his deposition testimony, Mr. Zilka is the sole owner and officer of Aloft, a company that has no employees. *See* Beard Decl., ¶ 6, Ex. 2 at 15:3-16:4.

26. Mr. Zilka is licensed to practice law in the State of California, but not in the State of Texas. *See* Beard Decl., ¶ 9, Ex. 6.

27. Zilka-Kotab PC (previously known as Silicon Valley IP Group) has existed in San Jose for seven years. *See* Beard Decl., ¶ 10, Ex. 7.

28. Zilka-Kotab PC does not have a Texas office. *See* Beard Decl., ¶ 11.

29. Dominic Kotab is Mr. Zilka's business partner at Zilka-Kotab PC in San Jose, California. *See* Beard Decl., ¶ 12, Ex. 8.

30. None of the operative facts giving rise to this lawsuit occurred in Eastern Texas. *Compare*, *e.g.*, Complaint *with* Yahoo! Answer, Google Answer; *see also infra*. Sections I.B. and I.C.

**D. Connections Of Potential Party And Non-Party Witnesses To Northern California**

31. Because this litigation is in its infancy, Defendants have not yet conducted a thorough search for potential non-party witnesses. *See* Beard Decl., ¶ 13; Weingaertner Decl., ¶¶ 9-11.

32. However, Google has preliminarily identified Microsoft Corporation of Redmond, Washington, as being a likely source of discoverable information to support Defendants' defenses. *See* Weingaertner Decl., ¶¶ 10-11.

33. Two additional non-party witnesses who reside within the Northern District of California and who may be called in connection with hearings or trial in this case include:

- Dominic Kotab, a principal at Zilka-Kotab PC—the firm that prosecuted the '351 patent—who may have information regarding prosecution of the '351 patent and its invalidity and unenforceability; and

- Jesse Ozog, an employee at Zilka-Kotab PC, who may have relevant information on the reduction to practice (or lack thereof) of the invention claimed in the '351 patent, which could relate to certain invalidity arguments.

*See* Beard Decl., ¶ 5, Ex. 1, ¶ 14.

34. None of the non-party witnesses identified by Defendants resides in Texas. *See* Beard Decl., ¶¶ 12, 15, Exs. 8 and 9.

35. Defendants are not aware of any potential witnesses who reside in Texas. *See* Saari Decl., ¶¶ 5, 7, 15, Weingaertner Decl., ¶¶ 8-9.

36. Most of the potential party and non-party witnesses identified by Defendants reside within the Northern District of California, while virtually all of the non-Northern California witnesses reside in the State of Washington (which is far closer to Northern California than it is to Tyler, Texas). *See supra* ¶¶ 7, 15.

37. Party and non-party witnesses who reside in Northern California would have to travel approximately 1,600 miles one way—including non-direct air travel, or direct air travel to Dallas/Fort Worth ("DFW") combined with a lengthy drive—to get to Tyler, Texas, to attend court proceedings in this case if it is not transferred. *See* Beard Decl., ¶ 16.

38. Party and non-party witnesses who reside in the State of Washington would have to travel approximately 680 miles one way to the Northern District of California, but approximately 1,800 miles one way—including non-direct air travel, or direct air travel to DFW combined with a lengthy drive—to get to Tyler, Texas. *See* Beard Decl., ¶ 16.

## II. ARGUMENT

### A. Legal Standard Under 28 U.S.C. § 1404(a)

A court may transfer a case to another district "[f]or the convenience of the parties and witnesses, in the interest of justice." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (*en banc*) (*Volkswagen II*); *see also* 28 U.S.C. § 1404(a). In order to prevail, the movant need only demonstrate that the proposed new venue is clearly more convenient. *See id.*

The threshold question for a transfer analysis is "whether the judicial district to which transfer is sought qualifies under the applicable venue statutes as a judicial district where the civil action 'might have been brought.'" *In re Horseshoe Entm't*, 337 F.3d 429, 433 (5th Cir. 2003). If this threshold is satisfied, the court must then consider the following private and public interest factors to ascertain the more convenient forum: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for witnesses; (4) other practical problems that make trial of the case easy, expeditious, and inexpensive; (5) administrative difficulties flowing from court congestion; (6) the local interest of the forum; (7) the familiarity of the forum with the law that will govern the case; and (8) avoidance of unnecessary problems of conflict of laws or the application of foreign law. *See Volkswagen II*, 545 F.3d at 315.

Two recent appellate opinions have clarified the transfer analysis. In *Volkswagen II*, the Fifth Circuit granted a writ of mandamus requiring the Eastern District of Texas to transfer a products liability claim stemming from an automobile collision to the Northern District of Texas. 545 F.3d at 307. In an *en banc* decision, the Fifth Circuit found that the trial court had given inordinate weight to the plaintiff's choice of venue and had not properly considered the ease of access to sources of proof, availability of compulsory process, cost of attendance for willing witnesses, and the local interests of the fora. *Id*. at 318. The court further held that the district court improperly applied the stricter forum *non conveniens* dismissal standard—which requires that the interest factors "substantially outweigh the plaintiff's choice of venue"—as opposed to the proper "clearly more convenient" standard. *See id*. at 314 and n.10.

6

The Fifth Circuit went on to provide the following guidance regarding the specific factors to be considered:

- technology advancements that decrease the inconvenience of remotely located sources of proof "do[] not render [the relative ease of access to proof] factor superfluous[,]" *id*. at 316;

- the availability of compulsory process factor favors transfer where the non-party witnesses were located outside the Eastern District's absolute subpoena power, but within the absolute subpoena power of the transferee venue, *id*.;

- the 100-mile subpoena threshold rule favors transfer where the identified witnesses were located within the transferee venue while none were located in the Eastern District, *id*. at 317;

- the local interest factor weighed heavily in favor of transfer where the relevant factual connections were to the transferee venue and not the Eastern District, *id*.; and

- where the product at issue in the lawsuit is located in virtually any venue, the local interest factor does not weigh in favor of the Eastern District simply because the product is also available in the Eastern District. *Id*. at 317-18.

Soon thereafter, the Federal Circuit granted a writ of mandamus directing the district court to transfer a patent case from the Eastern District of Texas to the Southern District of Ohio. *See In re TS Tech USA Corp.*, 551 F.3d 1315 (Fed. Cir. 2009). Relying on *Volkswagen II*, the Federal Circuit similarly found that the district court had erred by (1) giving too much weight to the plaintiff's choice of forum, (2) failing to recognize the cost of attendance of witnesses where the vast majority witnesses had to travel farther to attend trial in Texas, (3) failing to recognize the ease of access to sources of proof where the vast majority of the physical and documentary evidence was located closer to the transferee venue, and (4) disregarding Fifth Circuit precedent by determining the local interests on the basis of local sales of the allegedly infringing products. 551 F.3d at 1319-21.

In light of these recent Fifth and Federal Circuit directives, and after considering the relevant factors, it would be clearly more convenient for this case to proceed in the Northern District of California.

### B. The Northern District Of California Is Clearly The More Convenient Venue.

#### 1. Aloft could have brought this case in the Northern District of California.

The threshold question on a transfer motion is satisfied here because Aloft could have brought this case in the Northern District of California. A plaintiff may bring a patent infringement suit in any judicial district "where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). For venue purposes, a corporate defendant "reside[s]" in any district where it is subject to personal jurisdiction. 28 U.S.C. § 1391(c). Here, both the remaining Defendants (Yahoo! and Google) are headquartered in the Northern District. *See* Relevant Procedural and Factual Background Section ("Fact Section"), *infra*, at ¶¶ 6, 14. Accordingly, Aloft could have brought this suit in the Northern District.

#### 2. Each of the relevant private and public interest factors favors transfer to the Northern District of California.

##### (a) The location of sources of evidence strongly favors transfer.

The relative ease of access to sources of proof strongly favors transfer to the Northern District of California. This factor has been found to favor transfer where the documentary and physical evidence is located mainly in or closer to the transferee venue, and where no evidence is located in the Eastern District of Texas. *See In re TS Tech*, 551 F.3d at 1317. Here:

- substantially all of the documents related to Yahoo's and Google's accused products are located at their Northern California offices, with some of Google's documents also located in its Kirkland, Washington office, *see* Fact Section at ¶¶ 10, 18;

- the source code for Yahoo's and Google's accused products is located at, and will be solely available for review in, their Northern California offices or, in the case of Google, potentially also in its Kirkland, Washington office, *see* Fact Section at ¶¶ 12, 20; and

- no documentary or physical evidence is located in the Eastern District of Texas. *See* Fact Section at ¶¶ 13, 21.

Accordingly, the relative ease of access to sources of proof factor weighs in favor of the Northern District. Essentially all documents are located there, with some of Google's documents

also located in nearby Washington. And the key physical evidence (*i.e.*, the physical embodiment of the relevant source code) is only available in the Northern District—as to source code, this not a situation where technological advances can lessen the inconvenience of remotely located evidence. *See Odom v. Microsoft*, No. 6:08-cv-331, 2009 U.S. Dist. LEXIS 9835, at *9-10 (E.D. Tex. Jan. 30, 2009) (emphasizing the physical nature of evidence in considering this factor); *cf. Fifth Generation Computer Corp. v. IBM Corp.*, No. 9:08-cv-205, 2009 U.S. Dist. LEXIS 12502, at *11-12 (E.D. Tex. Feb. 13, 2009) (finding this factor in favor of transfer where a number of documents were located in the transferee forum and none were located in the Eastern District of Texas, even though some documents may also be located in California, New Mexico, Minnesota, and the Southern District of Texas).

### (b) The availability of compulsory process factor favors transfer.

The availability of compulsory process to secure the attendance of non-party witnesses favors transfer to the Northern District of California. Under the Federal Rules, a court may quash a subpoena that would require a non-party witness to travel more than 100 miles to testify, and a court must quash a subpoena that would require a non-party witness to travel more than 100 miles to another state. *See* Fed. R. Civ. P. 45(c)(3)(A)(ii), (B)(iii). Therefore, a district court possesses absolute subpoena power, not subject to motions to quash, over non-party witnesses located within 100 miles of its courthouses. *See Volkswagen II*, 545 F.3d at 316. In *Volkswagen II*, the court found that the Eastern District's lack of absolute subpoena power over identified non-party witnesses, and the existence of a proper transferee venue that had such subpoena power, favored transfer of the case. *Id.*; *cf. Invitrogen Corp. v. General Elec. Co.*, No. 6:08-cv-113, 2009 U.S. Dist. LEXIS 9113, at *3 (E.D. Tex. Feb. 9, 2009) (finding compulsory process factor slightly in favor of transfer where two non-party witnesses were located within the absolute subpoena power of the transferee district and none were located in Texas). Here:

- the likely non-party witnesses identified by Defendants (with the exception of Microsoft, which is based in the State of Washington) reside and/or work within

- 100 miles of the Northern District's courthouses and are therefore subject to that court's absolute subpoena power, *see* Fact Section at ¶ 32;
- none of the likely non-party witnesses identified by Defendants reside or work within 100 miles of an Eastern District of Texas courthouse, let alone in the entire State of Texas and, therefore, not a single identified non-party witness resides or works within the Eastern District's absolute subpoena power, *see* Fact Section at ¶ 34; and
- the non-party witnesses—a principal and an employee of Mr. Zilka's law firm, *see* Fact Section at ¶ 33—have personal and business interests that are likely to put them at odds with Defendants and compulsory process may therefore be needed to obtain their attendance at trial (regardless of whether they now say they would be willing to travel to Texas for trial).

Consistent with the weight given to this factor by the Fifth Circuit in *Volkswagen II*, *see* 545 F.3d at 316-17, and given the potential prejudice to Defendants if key non-party witnesses cannot be compelled to attend trial, the "compulsory process" factor favors transfer to the Northern District of California.

### (c) The cost of attendance for willing witnesses strongly favors transfer.

The cost of attendance for willing witnesses—including both party and non-party witnesses—strongly favors transferring this case to the Northern District of California. The Fifth Circuit has set forth a 100-mile threshold rule, which states that, "[w]hen the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *See Volkswagen II*, 545 F.3d at 317. Applying the 100-mile rule, the Federal Circuit in *In re TS Tech* found this factor to favor transfer where none of the identified key witnesses were located in the Eastern District of Texas, but all were either within the transferee venue or closer to it than the Eastern District. *See* 551 F.3d at 1317. Here:

- most of the potential party and non-party witnesses reside in the Northern District of California, with some potential party and non-party witnesses residing in the State of Washington, *see* Fact Section at ¶ 36;
- those party and non-party witnesses who reside within the Northern District of California (which constitutes most of the witnesses) would have to travel approximately 1,600 miles one way—including non-direct air travel, or direct air travel combined with a lengthy drive—to attend a hearing or trial in Tyler, Texas, if the case is not transferred, *see* Fact Section at ¶ 37;

10

- those party and non-party witnesses who reside within the State of Washington would have to travel approximately 680 miles one way to proceedings in the Northern District of California, whereas those same witnesses would have to travel approximately 1,800 miles one way—including non-direct air travel, or direct air travel combined with a lengthy drive—to attend proceedings in Tyler, Texas, if the case is not transferred, *see* Fact Section at ¶ 38;

- there is not a single potential party or non-party witness who resides or works in the Eastern District of Texas, s*ee* Fact Section at ¶¶ 13, 21; and

- there would be no inconvenience to Aloft if this case is transferred to the Northern District, as, based on his own deposition testimony, Aloft's sole owner, officer, and employee—Kevin Zilka—resides and works in the Northern District. *See* Fact Section at ¶ 23.

Although most potential party and non-party witnesses identified to date reside within the Northern District of California, the "cost of attendance" factor would still favor transfer with respect to the identified potential witnesses who reside in Washington. *See*, *e.g.*, *In re TS Tech*, 551 F.3d at 1317 (finding that cost of attendance for willing witnesses favored transfer where the vast majority of witnesses were either in the transferee venue or much closer to it than Texas); *Odom*, 2009 U.S. Dist. LEXIS 9835, at *14-16, 23 (finding the same even when one identified witness was located in Texas because the case was "significantly localized in the Northwest"); *Fifth Generation*, 2009 U.S. Dist. LEXIS 12502, at *13-14 (finding the same even where one witness was located in Texas and some witnesses may have to travel a longer distance, and some witnesses were spread out across the country); *Amini Innovation Corp. Bank & Estate Liquidators, Inc.*, 512 F. Supp. 2d 1039, 1044 (S.D. Tex. 2007) (transferring from Southern District of Texas to District of New Jersey in part because "the majority of the witnesses . . . reside in New Jersey"). Moreover, given that both Plaintiff and Defendants have their principal places of business in the Northern District, there is a high likelihood that any additional potential witnesses that emerge will also be located there. *See Partsriver, Inc. v. Shopzilla, Inc.*, No. 2:07-cv-440, 2009 U.S. Dist. LEXIS 12482, at *7-8 (E.D. Tex. Jan. 30, 2009) (granting transfer based on the reasoning, *inter alia*, that many witnesses are likely located where Plaintiff and Defendants reside).

In sum, given that essentially all of the party and non-party witnesses are located in the Northern District (with some in the State of Washington), it would be far more convenient for willing witnesses—both from a time and cost perspective—to travel to the Northern District of California than to the Eastern District of Texas.

### (d) The other practical problems factor is neutral as to transfer.

There are no other practical problems that would prevent the "easy, expeditious, and inexpensive" trial of the case if it were transferred to the Northern District. For example, it is noteworthy that the Northern District of California has local patent rules that are similar to those established in the Eastern District of Texas, which will ensure that this patent case is handled efficiently and expeditiously if transferred. *See Am. Calcar, Inc. v. Am. Honda Motor Co.*, 2006 U.S. Dist. LEXIS 69373, at *6-7 (E.D. Tex. Sept. 26, 2006) (in analyzing the "easy, expeditious, and inexpensive" factor, the court favorably considered the fact that the transferee court had "adopted rules for patent cases similar to those used by this Court").

### (e) The court congestion factor is neutral as to transfer.

The factor relating to potential administrative difficulties flowing from court congestion is neutral in this case. As this Court recently noted, the "court congestion" factor is neutral in the context of a motion to transfer a patent case from the Eastern District of Texas to the Northern District of California. *See MedioStream, Inc. v. Acer Am. Corp.*, No. 2:07-cv-376, 2008 U.S. Dist. LEXIS 74066, at *9 (E.D. Tex. Sept. 26, 2008).

### (f) The local interest factor substantially favors transfer.

The local interest factors weighs heavily in favor of transfer because the Northern District has a strong local interest in resolving this dispute, while the Eastern District has little if any local interest in it.

With respect to the Northern District:

- both Defendants have their principal places of business in the Northern District, *see* Fact Section at ¶¶ 6, 14;

- Mr. Zilka, who is the sole owner and officer of Aloft, as well as the inventor on the '351 patent, resides and works in the Northern District, *see* Fact Section at ¶ 23; and

- almost all of the operative facts supporting all parties' claims and defenses occurred in the Northern District (with some relating to Google occurring in the State of Washington), including, for example, the '351 patent's prosecution and the development of the accused products. *See* Fact Section at ¶¶ 11, 19, 33.

In contrast, the Eastern District of Texas has little connection to this case:

- no party in this case, not even Aloft, has its principal place of business in the Eastern District of Texas, let alone anywhere else in Texas, *see* Fact Section at ¶¶ 6, 14, 22;

- as for Aloft, it is a shell company incorporated in Texas for the sole purpose of filing lawsuits in the Eastern District of Texas, but—according to Mr. Zilka's deposition testimony—Aloft has no employees and no owners or officers other than Mr. Zilka, who himself resides and works in the Northern District of California, *see* Fact Section at ¶¶ 22, 23;

- none of the evidence in this case is located in the Eastern District, *see* Fact Section at ¶¶ 8, 13, 16, 21;

- no witness has been identified who resides or works in the Eastern District, *see* Fact Section at ¶¶ 13, 21; and

- none of the operative facts supporting the parties' claims or defenses occurred in the Eastern District (nor anywhere else in Texas). *See* Fact Section at ¶ 30.

Indeed, where, as here, a plaintiff attempts to manufacture venue, courts routinely transfer the case. *See*, *e.g.*, *Surfer Internet Broad. of Miss., LLC v. XM Satellite Radio Inc.*, No. 4:07-cv-034, 2008 WL 1868426, at *1 (N.D. Miss. Apr. 24, 2008); *Gemini IP Tech. v. Hewlett-Packard Co.*, No. 07-C-205-S, 2007 WL 2050983, at *1 (W.D. Wisc. July 16, 2007); *Broad. Data Retrieval Corp. v. Sirius Satellite Radio, Inc.*, 79 U.S.P.Q. 2d 1603 (C.D. Cal. 2006). As the *Gemini* court stated, "there is nothing to suggest that Wisconsin is a convenient forum for the plaintiff in the sense of § 1404(a). The only apparent connection between plaintiff and Wisconsin is that it was organized here for purposes of establishing venue. There is no suggestion that it has employees or officers in Wisconsin or that anyone likely to give relevant testimony resides here." *Gemini*, 2007 WL 2050983, at *1.

In the end, the Northern District of California has a substantially greater local interest in resolving this case than does the Eastern District of Texas. This factor therefore weighs in favor of transfer. *See Partsriver*, 2009 U.S. Dist. LEXIS 12482, at *7-8 (E.D. Tex. Jan. 30, 2009) (granting transfer to the Northern District of California where plaintiff along with six of the

seven named defendants have their principal places of business in California, and the witnesses, documents, and operative facts all center around California); *Odom*, 2009 U.S. Dist. LEXIS 9835, at *19-20 (granting transfer to the District of Oregon where Oregon had extensive ties to the events that gave rise to the suit and "no relevant connection" existed with Texas); *Fifth Generation*, 2009 U.S. Dist. LEXIS 12502, at *16-17 (finding this factor in favor of transfer to the Southern District of New York where the case had "a very limited connection to Texas" and there was "little, if any, local interest in adjudicating this dispute.").

### (g) The conflict of and familiarity with the law is a neutral factor.

Neither "the familiarity of the forum with the law that will govern the case," nor "the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law" prevents transfer of this case to the Northern District of California. Both the Eastern District of Texas and Northern District of California are familiar with the federal patent laws that govern this case.

## III. CONCLUSION

In this case, a majority of the private and public interest factors relevant to the transfer analysis weigh in favor of transferring this case to the Northern District of California, with some factors weighing heavily in favor of transfer, and none weighing against it. In sum, these factors establish that the Northern District of California is clearly the more convenient jurisdiction.

Under Fifth and Federal Circuit precedent—as well as the many recent decisions from this Court—this case should therefore be transferred.

April 6, 2009                                    Respectfully submitted,


/s/ Brooks Beard (by permission Otis Carroll)
Michael A. Jacobs (mjacobs@mofo.com)\
Lead Attorney
Brooks Beard (bbeard@mofo.com)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105
Tel:  (415) 268-7000
Fax:  (415) 268-7522

Otis Carroll
State Bar No. 03895700
Deborah Race
State Bar No. 16448700
IRELAND, CARROLL & KELLEY, PC
6101 S. Broadway, Suite 500
Tyler, Texas  75703
Tel:  (903) 561-1600
Fax:  (903) 581-1071
fedserv@icklaw.com

Attorneys for YAHOO! INC.


/s/ Scott T. Weingaertner
(by permission Otis Carroll)
Scott T. Weingaertner
sweingaertner@kslaw.com
Robert F. Perry
rperry@kslaw.com
Christopher C. Carnaval
ccarnaval@kslaw.com
KING & SPALDING LLP
1185 Avenue of the Americas
New York, NY 10036-4003
Telephone:  (212) 556-2100
Facsimile:  (212) 556-2222

Michael E. Jones
State Bar No. 10929400
Allen F. Gardner
State Bar No. 24043679
POTTER MINTON
A Professional Corporation
110 N. College, Suite 500 (75702)
P.O. Box 359
Tyler, Texas 75710
(903) 597-8311
(903) 593-0846 (Facsimile)
mikejones@potterminton.com
allengardner@potterminton.com

Attorneys for GOOGLE, INC.

### CERTIFICATE OF CONFERENCE

The undersigned has conferred with Craig Tadlock, attorney for Plaintiff, regarding the relief requested in this motion. The motion is opposed.

Date: April 6, 2009  /s/ Deborah Race

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3). Any other counsel of record will be served by facsimile transmission and/or first class mail this 6th day of April, 2009.

Otis Carroll