IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| ALOFT MEDIA, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 6:08-cv-509 |
| v. | § | |
| | § | |
| YAHOO!, INC., et al., | § | JURY TRIAL DEMANDED |
| | § | |
| Defendants. | § | |

**PLAINTIFF ALOFT MEDIA LLC'S RESPONSE TO DEFEDNANTS'
<u>MOTION TO TRANSFER PURSUANT TO 28 U.S.C. § 1404(a)</u>**

Plaintiff Aloft Media, LLC ("Aloft") responds to the Motion to Transfer Pursuant to 28 U.S.C. § 1404(a) ("Motion to Transfer") filed by Defendants Yahoo! Inc. ("Yahoo"), and Google, Inc. ("Google") (collectively, "Defendants") as follows:

**FACTS**

**A.    This Lawsuit and Its Current Status**

1.    Aloft filed this lawsuit for patent infringement against Yahoo, Google, and AOL LLC ("AOL") on December 30, 2008, alleging that Yahoo, Google, and AOL[1] infringe U.S. Patent No. 7,472,351 (the "'351 Patent," or the "patent-in-suit"). *See* Complaint for Patent Infringement (Docket No. 1). Among other things, Aloft alleges that Yahoo and Google have directly infringed and/or induced or contributed to infringement by others of the '351 Patent in this District. *See* Complaint, ¶¶ 6-7, 9-10, at pp. 2-3.

2.    Yahoo has filed an answer and counterclaim in this case, and Google has filed an answer. *See* Defendant Yahoo! Inc.'s Answer, Affirmative Defenses, and Counterclaims to

---

[1] AOL, which is a Delaware limited liability company with its principal place of business in Virginia, and AOL is now dismissed from the case. *See* Order of Dismissal (Docket No. 37, April 6, 2009).

Complaint for Patent Infringement (Docket No. 22, Feb. 19, 2009); Defendant Google Inc.'s Answer to Plaintiff's Complaint (Docket No. 25, Feb. 19, 2009).

3. The Court held a status conference in this case on April 6, 2009. *See* Order setting status conference (Docket No. 32, Mar. 2, 2009); Minutes of Status Conference (Docket No. 42, Apr. 6, 2009). At the status conference, Aloft and Defendants consented to have a magistrate judge conduct any and all further proceedings in the case, including trial, and the case has been referred to Magistrate Judge Love. *See* Consent to Proceed Before United States Magistrate Judge (Docket No. 38, Apr. 6, 2009); Order of Reference (Docket No. 41, Apr. 8, 2009).

4. This case is scheduled for a *Markman* hearing on February 25, 2010, and it is set for trial on September 13, 2010. *See* Order (Docket No. 43, Apr. 8, 2009).

**B. Aloft, Its Documents, and Virtually All of Its Activities Are in the Eastern District of Texas**

5. Aloft is a Texas limited liability company, formed in July 2007, with its principal place of business at 211 W. Tyler St., Suite C, Longview, Texas 75601, in the Eastern District of Texas.[2] Declaration of Christopher M. Edgeworth ("Edgeworth Dec.") at ¶ 4 & Ex. 2.

6. Aloft has a physical office at its principal place of business in Longview and has a lease share agreement for its office space corresponding to a commercial lease. Edgeworth Dec. at ¶ 5 & Ex. 4, 5, 6.

7. The President of Aloft, Chris Edgeworth, works at the Longview office. Mr. Edgeworth is an equity member of Aloft. Mr. Edgeworth also resides in Longview, Texas. Edgeworth Dec. at ¶¶ 2, 3 & Ex. 1.

---

[2] Virtually all of the facts in Defendants' Motion to Transfer about Aloft and its business are wrong. *See* Motion to Transfer, ¶¶ 22, 24-25, and 30. Most troublingly, Defendants knew that most of these facts were wrong when they filed their Motion to Transfer, through discovery in other cases involving Aloft and Defendants. This will be discussed in more detail later.

8. Aloft's other equity member, Kevin Zilka, who is also the inventor of the '351 Patent, lives in Northern California and practices law there. However, Mr. Zilka's business address for Aloft matters is at Aloft's Longview office, and Mr. Zilka travels to the Eastern District of Texas as needed for purposes of Aloft's business. Edgeworth Dec. at ¶ 7.

9. Aloft shares the services of one other employee, who also works at the Longview office. This employee's duties include filing documentation for Aloft matters, maintaining Aloft's files and records in its office, and supporting Aloft's other business activities. Edgeworth Dec. at ¶ 8.

10. All of Aloft's physical documents, including its corporate documents and its patent sales and assignment agreements, are located in its Longview office, and all of Aloft's electronic documents are served and stored via a server located in its Longview office. Edgeworth Dec. at ¶ 9, 12.

11. The patent prosecution file for the '351 Patent is located in Aloft's Longview office. Likewise, all of the emails and other documents from the law firm that prosecuted the '351 Patent (*i.e.*, Zilka-Kotab PC) are located in Aloft's Longview office. Edgeworth Dec. at ¶ 10 & Ex. 9.

12. Mr. Edgeworth, who lives and works in Longview and has a law degree, is the patent agent who represents Aloft before the U.S. Patent and Trademark Office and has power of attorney on all active Aloft matters. Edgeworth Dec. at ¶¶ 2, 11.

13. Aloft has an accountant in Longview, a bank account in Henderson, Texas, and tax counsel in Austin, Texas. Edgeworth Dec. at ¶¶ 13, 14, 15.

14. Aloft has filed several lawsuits for patent infringement, and all of those lawsuits have been brought in the Eastern District of Texas. *See* Civil Action No. 6:07-cv-355, *Aloft v. Adobe Systems Inc., et al.*; Civil Action No. 6:08-cv-50, *Aloft v. Microsoft Corp., et al.*; Civil

Action No. 6:08-cv-51, *Aloft v. Microsoft Corp., et al.*; Civil Action No. 2:08-cv-99, *Aloft v. Nokia, Inc., et al.*; Civil Action No. 2:08-cv-153, *Aloft v. Honeywell Int'l, Inc., et al.*; Civil Action No. 6:08-cv-255, *Aloft v. Yahoo! Inc., et al.*; Civil Action No. 2:08-cv-292, *Aloft v. Palm, Inc., et al.*; Civil Action No. 6:08-cv-440, *Aloft v. Google, Inc.*; Civil Action No. 6:08-cv-509, *Aloft v. Yahoo! Inc., et al.*[3]  Aloft has never brought a lawsuit in any judicial district other than the Eastern District of Texas.  Edgeworth Dec. at ¶ 16.

15. Aloft believes that all of the documents in its possession, custody or control that would be relevant to this litigation are located in the Eastern District of Texas, at Aloft's office in Longview and/or at the offices of Aloft's counsel in Longview.  Edgeworth Dec. at ¶ 17.

16. Aloft will make Mr. Zilka available for trial in the Eastern District of Texas, and it will also make him available to give deposition testimony in the Eastern District of Texas, at the offices of Aloft's litigation counsel in Longview.  Edgeworth Dec. at ¶ 18.

17. In other Aloft cases, with the exception of the first time he was deposed (in the 07-cv-355 case), Mr. Zilka has always given his depositions in the Eastern District of Texas, whether in his capacity as a Rule 30(b)(6) witness for Aloft, in his individual capacity under Rule 30(b)(1), or in his capacity as a corporate representative for the law firm of Zilka-Kotab PC.  Edgeworth Dec. at ¶ 19.

18. Aloft is not aware of any information that Dominic Kotab would have with respect to the prosecution of the '351 Patent or its validity and enforceability.  Edgeworth Dec. at ¶ 20.

---

[3] The Court may take judicial notice of these cases and the orders and pleadings filed in them pursuant to Fed. R. Evid. 201, and Aloft requests that the Court do so.

19. Aloft is not aware of any information that Jesse Ozog would have with respect to the reduction to practice (or lack thereof) of the invention claimed in the '351 Patent. Edgeworth Dec. at ¶ 21.

20. In summary, Aloft, its documents, and virtually all of its activities are located in the Eastern District of Texas. The Eastern District of Texas is far more convenient for Aloft to litigate this case than the Northern District of California. Edgeworth Dec. at ¶ 22.

**C.  The Other Litigation Between Aloft and Defendants in This Court**

21. Aloft has 3 other patent infringement lawsuits pending against Yahoo and/or Google, all of which are in this District, all in this Division, and all assigned by consent to this very Court for trial and all pretrial proceedings. *See* Civil Action No. 6:08-cv-50, *Aloft v. Microsoft Corp., et al.*; Civil Action No. 6:08-cv-255, *Aloft v. Yahoo! Inc., et al.*; Civil Action No. 6:08-cv-440, *Aloft v. Google, Inc.*[4]

22. Aloft's 6:08-cv-50 case is against both Yahoo and Google and has been pending since February 2008. This Court has already held a *Markman* hearing and issued its claim construction order, and trial is set in just 5 months in October 2009.

23. Aloft's 6:08-cv-255 case is against Yahoo and one other co-defendant and has been pending since June 2008. The *Markman* hearing is set for June 2009, and trial is set for February 2010.

24. Aloft's 6:08-cv-440 case is against Google and has been pending since December 2008. The *Markman* hearing is set for January 2010, and trial is set for September 2010.

25. In each of these 3 cases, Yahoo and/or Google have asserted counterclaims against Aloft, a Discovery Order and a Docket Control Order are in place, the parties have consented to have a magistrate judge conduct any and all further proceedings in the case,

---

[4] Aloft requests that the Court take judicial notice of the entirety of its files in these cases.

including trial, and the case has been referred to Magistrate Judge Love. Yahoo and Google have not moved to transfer any of these other cases.

## C. Yahoo and Google Misrepresent Crucial Facts About Aloft, Even Though They Knew or Should Have Known That Their Statements Were Incorrect

26. In the introduction to their Motion to Transfer, in their "facts" section, and continuing into the argument sections of the Motion, Yahoo and Google misrepresent facts about Aloft that are critical to this Motion. For instance, Yahoo and Google misrepresent to this Court that "Aloft Media is a shell corporation with no employees," that Aloft's "principal place of business is in San Jose, California," that "[i]ts Longview office sits empty," and that its "sole owner and officer" is Kevin Zilka. See Motion to Transfer at p. 1; *see also* Motion to Transfer, ¶¶ 22, 24-25, and 30 at pp. 3-4. As shown above and in the Edgeworth Declaration and Exhibits 1 through 8 thereto (all of which were produced to Defendants by March 10, 2009, almost a month before Defendants filed their Motion to Transfer), all of these statements are false. *See* Declaration of Craig Tadlock ("Tadlock Dec.") at ¶ 3 & Ex. 1.

27. Interestingly, Yahoo and Google knew or should have known that their statements were false, because Aloft produced in discovery documents and deposition testimony that show these statements to be false. Importantly, these were not things that Aloft quietly slipped into a production; rather, these documents and deposition transcripts were things that Yahoo and Google expressly requested that Aloft produce.

28. For instance, on December 5, 2008, Google's counsel sent Aloft's counsel a letter in the 08-cv-50 case where Google specifically requested, among other things, all materials related to Aloft's corporate formation and structure and all materials necessary to identify Aloft's owners, employees, officers and other representatives. *See* Tadlock Dec. at ¶ 4 & Ex. 2. As

noted, the documents attached as Exhibits 1 through 8 to the Edgeworth Declaration, which fall into these categories, were all produced by March 10, 2009.[5]

29. Similarly, on December 19, 2008 – just 2 days after this deposition was taken – Yahoo's counsel sent Aloft's counsel an email specifically requesting production of Mr. Zilka's depositions taken in Aloft's 08-cv-99 case against Nokia and others. *See* Tadlock Dec. at ¶ 5 & Ex. 3.

30. In this deposition, which Aloft produced more than 2 months before this Motion was filed, Mr. Zilka testified, among other things, that as of December 17, 2008:

- Aloft had a physical office in Longview, Texas, which had been in place since October 2007, pursuant to a commercial lease; and

- Aloft had an employee at its office in Longview managing the office and handling administrative duties.

*See* Tadlock Dec. at ¶ 6 & Ex. 4 (Zilka Deposition excerpt); Tadlock Dec. at ¶ 7 & Ex. 5 (letter showing production of Zilka deposition to Defendants on January 23, 2009).

### D. Activities of Yahoo and Google and Their Evidentiary Shortcomings

31. Yahoo and Google each set forth several facts to attempt to support their arguments that certain documents and party witnesses are located in Northern California. Aloft has not had the opportunity to test these assertions, as discovery has not yet begun. Some of these statements, however, are notable for what Yahoo and Google do not say.

32. Importantly, Yahoo and Google do not contend that their instant messaging products accused of infringement in this lawsuit are not made, used, or sold in the Eastern District of Texas. In fact, that would be untrue, as Yahoo Messenger and Google Talk are

---

[5] Some of these documents did not exist until early February 2009, so their production in early March 2009 was made within a reasonable time. Earlier-dated documents were produced sooner.

readily available from any computer in the Eastern District of Texas that is connected to the Internet.

33. Yahoo states that "[a] majority" of its employees with potentially relevant information are located within the N.D. Cal., but it does not state that "all" such employees are in Northern California. *See* Motion to Transfer, ¶ 7 at 2. This is notable, because Yahoo has designated Rule 30(b)(6) witnesses in the 08-cv-50 case in Atlanta, Georgia, and has required Aloft to travel to Atlanta to depose them. *See* Tadlock Dec. at 13. Yahoo states that it has no witnesses in Texas, but it does not say that it has no witnesses in Atlanta or in other locations east of the Eastern District of Texas, which would be closer to this forum than to the Northern District of California. *See* Motion to Transfer, ¶ 8 at 2. Similarly, Yahoo states that "[t]he bulk of" its business activities relating to the accused product take place in Northern California, but it does not present evidence to rule out such activities taking place in Atlanta or other places east of this Court. *See* Motion to Transfer, ¶ 9 at 2.

34. Likewise, Google qualifiedly states that "a majority of" its employees with potentially relevant information are located in Northern California or Washington state, but it does not state that it has "no" employee witnesses in places closer to this Court than to the N.D. Cal. *See* Motion to Transfer, ¶¶ 15-16 at 3. Google further states with qualification that "[t]he bulk of" its business activities relating to the accused product take place in Northern California or Washington, that "[s]ubstantially all" of the documents related to its accused products are located in "or most accessible at" its offices in Northern California and Washington, that its products were "primarily developed" in Washington, but again, Google's evidence does not show that it has "no" such activities, documents or witnesses that are east of this Court or otherwise closer to this Court than to the N.D. Cal. *See* Motion to Transfer, ¶¶ 17-19 at 3.

35. Yahoo and Google are also familiar litigants in the Eastern District of Texas. A search for "Yahoo" run on the Pacer system (https://pacer.uspci.uscourts.gov/) resulted in 45 total party matches in the Eastern District of Texas, comprising 26 different cases, 25 of which were filed within the past 5 years, and 16 of which are currently pending. *See* Tadlock Dec. at ¶ 8 & Ex. 6. A search for "Google" run on Pacer resulted in 41 total party matches for Google, Inc. in the Eastern District of Texas, comprising 21 different cases, all of which were filed within the past 5 years, and 20 of which are currently pending. *See* Tadlock Dec. at ¶ 9 & Ex. 7. The courts of this District are very familiar with Yahoo and Google.

### E. Non-Party Witnesses

36. The most that Defendants can say about non-party witnesses (other than Messrs. Kotab and Ozog, who are discussed above and are not likely to have the discoverable information Defendants speculated about, as Aloft's evidence shows), is that Google has "preliminarily identified" Microsoft as "likely" having discoverable information. *See* Motion to Transfer, ¶ 32 at 5. Google does not provide any specifics as to what information Google might have, so this assertion does not rise above the level of speculation.

37. Yahoo and Google omit at least one potentially important non-party witness. In the 08-cv-50 and 08-cv-255 cases, Yahoo and Google have put the Aloft patents-in-suit into re-examination at the USPTO, and they appear to have established a pattern and practice of putting all Aloft patents-in-suit into re-exam. Aloft's re-exam counsel, Mr. Abraham Hershkovitz of the firm of Hershkovitz & Associates, LLC, is based on the East Coast, with offices in Virginia and the District of Columbia. *See* Tadlock Dec. at ¶¶ 10-11 & Ex. 8-9. If Yahoo or Google puts the '351 Patent into re-exam, or if the re-exams of the other Aloft patents-in-suit become relevant in this case, Mr. Hershkovitz is a non-party witness who is much closer to this Court than to the Northern District of California.

**APPLICABLE LAW**

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The decision whether to transfer is within a district court's discretion, but the court must exercise its discretion in light of the particular circumstances of the case. *Hanby v. Shell Oil Co.*, 144 F.Supp.2d 673, 676 (E.D. Tex. 2001); *Mohamed v. Mazda Corp.*, 90 F.Supp.2d 757, 768 (E.D. Tex. 2000).

The party seeking transfer of venue must show good cause for the transfer. *In re Volkswagen of America, Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("*Volkswagen II*"); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008). The moving party must show that transfer is "clearly more convenient." Otherwise, a plaintiff's choice of venue must be respected. *In re TS Tech*, 551 F.3d at 1320.[6]

When deciding whether to transfer venue, a district court balances two categories of interests: the private interests, *i.e.*, the convenience of the litigants, and the public interests in the fair and efficient administration of justice. *Id*. at 1319. The private interest factors weighed by the court include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* The public interest factors include: "(1) the administrative difficulties flowing from court congestion, (2) the local interest in having localized interests decided at home, (3) the familiarity of the forum with the law that will govern the case, and (4) the avoidance of

---

[6] These two recent appellate opinions, *Volkswagen II* and *In re TS Tech*, are particularly relevant in deciding transfer motions. In addition, the Federal Circuit recently issued a non-precedential opinion denying mandamus relief that challenged an order of the Eastern District of Texas that denied a defendant's motion to transfer. *In re Telular Corp.*, Misc. Docket No. 899 (Fed. Cir., April 3, 2009).

unnecessary problems of conflict or laws or in the application of foreign law." *Id*. None of the factors are dispositive on their own. *Id*. The Federal Circuit has also found that, in patent cases, the "consideration of the interest of justice, which includes **judicial economy**, may be determinative to a particular transfer motion, even if the convenience of the parties and witnesses might call for a different result." *Jackson v. Intel Corp.*, Civil Action No. 2:08-CV-154 (Memorandum Opinion and Order) (E.D. Tex., March 19, 2009) (Ward, J.) (quoting *Regents of the Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997)) (emphasis added).

## APPLICATION OF LAW TO FACTS

### A. Private Factors

In this case, all of the "private factors" are a virtual wash, or if anything, weigh in favor of retaining the case in this District. The balance is certainly not sufficiently tilted in favor of transfer to meet the "good cause" standard that reflects the appropriate deference to the plaintiff's choice of forum. *See In re Volkswagen*, 545 F.3d at 315.

With respect to the relative ease of access to sources of proof, all of Aloft's electronic and hard copy documents are here, whereas Defendants contend that "essentially all" or "substantially all" of their documents are in Northern California or Washington state, although their evidence did not rule out other documents that are located closer to this forum. In addition, Defendants have not identified any documents or evidence located outside this District that could not be produced electronically. In fact, in other litigation between these parties in this District, Yahoo and Google have produced virtually all of their documents electronically. *See* Tadlock Dec. at ¶ 14. This lessens any impact this factor may have on the transfer analysis. *See MHL Tek, LLC v. Nissan Motor Co.*, Civil Action No. 2:07-CV-289 (E.D. Tex. Feb. 23, 2009) (Ward, J.) (*citing In re D-Link Corp.*, 183 Fed. Appx. 967, 968 (Fed. Cir. 2006) (refusing to disturb district court's finding, under Fifth Circuit precedent, that where documents could, and likely

would, be exchanged electronically, this factor did not support transfer) and *Odom v. Microsoft Corp.*, Civil Action No. 6:08-CV-331, 2009 WL 279968, at *3 (E.D. Tex. Jan 30, 2009) (Love, Mag. J.) (noting that the *TS Tech* court appears to have emphasized the physical nature of the evidence at issue)).

With respect to convenience and compulsory process of witnesses, the situation is much the same – the factor appears to be a wash, and the Defendants have not carried their "good cause" burden to support transfer. Aloft has presented evidence that it is far more convenient for Aloft to litigate here, whereas Defendants state that it would be more convenient for them and their party witnesses to litigate in Northern California. With respect to non-party witnesses, the potential non-party witnesses identified by Defendants are either entirely speculative at this point (*i.e.*, Google's "preliminary" identification of Microsoft) or have been shown by Aloft not to actually be likely to have the information that Defendants speculated they might have (*i.e.*, Messrs. Kotab and Ozog). In addition, Aloft has identified a potential non-party witness, Mr. Hershkovitz, that is based on the East Coast and is thus substantially closer to this Court than the Northern District of California.

**B.     Public Interest Factors[7]**

**1.     The Administrative Difficulties Flowing from Court Congestion**

This Court has already set a trial date in this case of September 13, 2010, which is 20.5 months from the filing date of December 30, 2008. By contract, according to the most recent 2008 Federal Court Management Statistics, the median time from filing to trial for civil cases in the Northern District of California is 30.0 months. *See* Tadlock Dec. at ¶ 12 & Ex. 10. The

---

[7] Aloft does not separately discuss public interest factor 3, the familiarity of the forum with the law that will govern the case, because both this Court and the proposed transferee court in the Northern District of California are fully capable of applying patent law to infringement claims, such that this factor should not weigh in either direction. *See In re TS Tech*, 551 F.3d at 1320. Also the fourth public interest factor, the avoidance of unnecessary problems of conflict of laws, is inapplicable in the transfer analysis of this patent case and should not weigh in either direction.

median time to trial in this proposed transferee forum would mean that this case would take almost 50% longer to get to trial there than here. And, as a patent case that tends to be more complex than other civil cases, the time frame in the Northern District of California could well be even longer. The established trial date in this Court and the substantial time savings in this Court as compared to the proposed transferee court make this factor weigh heavily against transfer.

### 2. The Local Interest in Having Localized Interests Decided at Home

Aloft is based in the Eastern District of Texas, it has an office, a high-ranking officer, and an employee presence in this District, and it conducts virtually all of its business activities in this District. Aloft may not be as nearly as big as Yahoo or Google, but it is a local company with a legitimate presence in this District.[8] Aloft is not aware of any patent case that has been transferred out of this District since the *Volkswagen II* case issued, where the plaintiff was a resident of this District.

### 3. Judicial Economy

Section 1404(a) requires that a Court ruling on a motion to transfer also take into account "the interest of justice." 28 U.S.C. § 1404(a); *In re Volkswagen*, 545 F.3d at 315 ("When viewed in the context of § 1404(a), to show good cause means that a moving party, in order to support its claim for a transfer, must satisfy the statutory requirements and clearly demonstrate that a transfer is '[f]or the convenience of parties and witnesses, in the interest of justice.'"). The Federal Circuit has found that, in patent cases, the "consideration of the interest of justice, which includes judicial economy, may be determinative to a particular transfer motion, even if the

---

[8] There is nothing sinister about Aloft legally and legitimately choosing to locate its business and its activities here in this District, even if did so because this District was its preferred forum for patent litigation. *Accord, Helvering v. Gregory*, 69 F.2d 809, 810 (2d Cir. 1934) (Hand, J.) ("[A] transaction, otherwise within an exception of the tax law, does not lose its immunity, because it is actuated by a desire to avoid, or, if one choose, to evade, taxation. Any one may so arrange his affairs that his taxes shall be as low as possible; he is not bound to choose that pattern which will best pay the Treasury; there is not even a patriotic duty to increase one's taxes.").

convenience of the parties and witnesses might call for a different result." *Regents of the Univ. of Cal. v. Eli Lilly & Co.*, 119 F.3d 1559, 1565 (Fed. Cir. 1997) (citations omitted).

Here, Aloft is a Texas LLC, with its principal place of business and only office located in the Eastern District of Texas, which has never filed a patent case or any other lawsuit anywhere other than its home district, the Eastern District of Texas. More specifically, aside from this case against Yahoo and Google, Aloft has 3 other cases pending against Yahoo and/or Google, all in this District, all in this Division, and all assigned by consent to this very Court for trial and all pretrial proceedings. Yahoo and Google have not moved to transfer any of these other cases. In the 6:08-cv-50 case, this Court has already held a *Markman* hearing and issued its claim construction order, and trial is set in just 5 months. This Court is intimately familiar with these parties and will become even more so in the coming months.

Although this case does not involve the same patents as in these other cases, the accumulated knowledge and familiarity of this Court with both the plaintiff and the defendants facilitates the efficient use of judicial resources. *Jackson v. Intel*, Civil Action No. 2:08-CV-154 (Memorandum Opinion and Order) (E.D. Tex. Mar. 19, 2009) (Ward, J.). For example, several of the *Georgia Pacific* factors that go into an assessment of a reasonable royalty for damages purposes relate to issues where the accumulated knowledge and familiarity of this Court with the parties crosses over from case to case. *See Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), *mod. and aff'd*, 446 F.2d 295 (2d Cir.), *cert. denied*, 404 U.S. 870 (1971) (Factor 2 – the rates paid by the licensee for the use of other patents comparable to the patent in suit; Factor 4 – the licensor's established policy and marketing program; Factor 5 – the commercial relationship between the licensor and licensee; Factor 12 – the portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions; Factor 15 – the amount

14

that the licensor and licensee would be willing to agree to in the hypothetical negotiation). Likewise, this Court's familiarity with the parties would likely help in determining any discovery disputes between these parties, since the Court would have some understanding of the structure of the companies and the types of documents they have.

Where the interests of judicial economy counsel so strongly in one direction in the transfer analysis, the Federal Circuit has held that other factors may be "afforded little or no weight." *Regents of the Univ. of Cal.*, 119 F.3d at 1565; *see also Invitrogen Corp. v. General Elec. Co.*, No. 6:08-CV-112, 2009 WL 331891, at *4 (E.D. Tex. Feb. 9, 2009) (Love, Mag. J.) (finding that judicial economy supported transfer because of proposed transferee court's familiarity with the plaintiff). In *Regents of the Univ. of Cal.*, the Federal Circuit agreed with an Indiana district court's finding that, although, under its regional circuit law, the convenience of the parties and witnesses favored neither itself nor the transferee forum, the interests of judicial economy would be served by retaining the case in Indiana rather than transferring to California. *Regents of the Univ. of Cal.*, 119 F.3d at 1565. The same is true here, where the familiarity of this Court with the parties based on the other pending cases means that judicial economy weighs heavily in favor of retaining the case in this Court.

## CONCLUSION

For the reasons set forth herein, Aloft respectfully requests that the Court deny Defendants' Motion to Transfer and grant Aloft such other and further relief to which it is entitled.

Dated: May 1, 2009

Respectfully submitted,

_____
Eric M. Albritton
Texas State Bar No. 00790215
Craig Tadlock
Texas State Bar No. 00791766
Adam A. Biggs
Texas State Bar No. 24051753
ALBRITTON LAW FIRM
P.O. Box 2649
Longview, Texas 75606
(903) 757-8449 (phone)
(903) 758-7397 (fax)
ema@emafirm.com
cct@emafirm.com
aab@emafirm.com

T. John Ward, Jr.
Texas Bar No. 00794818
WARD & SMITH LAW FIRM
P.O. Box 1231
Longview, TX 75606-1231
Telephone: (903) 757-6400
Facsimile: (903) 757-2323
jw@jwfirm.com

Danny L. Williams
Texas State Bar No. 21518050
Chris Cravey
Texas State Bar No. 24034398
Matthew R. Rodgers
TX State Bar No. 24041802
WILLIAMS, MORGAN &
AMERSON, P.C.
10333 Richmond, Suite 1100
Houston, Texas 77042
Telephone: (713)934-4060
Facsimile: (713) 934-7011
danny@wmalaw.com
cravey@wmalaw.com
mrodgers@wmalaw.com

Scott E. Stevens
State Bar No. 00792024
Kyle J. Nelson
State Bar No. 24056031
STEVENS LAW FIRM
P.O. Box 807
Longview, Texas 75606
Tel: 903-753-6760
Fax: 903-753-6761
scott@seslawfirm.com
kyle@seslawfirm.com

Jason A. Holt
Texas State Bar No. 24041122
Matthew M. Hill
Texas State Bar No. 24041101
HILL & HOLT, P.L.L.C.
P.O. Box 6945
Longview, TX 75608
(903) 230-7914 (phone)
(903) 269-1381 (fax)
jholt@hillandholt.com
mhill@hillandholt.com

*ATTORNEYS FOR PLAINTIFF*
*ALOFT MEDIA, LLC*

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). As such, this motion was served on all counsel, who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A). Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(d) and (e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by email, on this the 1st day of May, 2009.

_____
Craig Tadlock